UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

------------------------------------------------------

DA'SHAWN COATS,

       Plaintiff,

  v.

ST. TAMMANY PARISH FIRE PROTECTION DISTRICT # 4,

       Defendant.

------------------------------------------------------

**CASE NO. 21-cv-2402**

JUDGE _____

MAGISTRATE JUDGE _____

## **COMPLAINT**

Now comes Plaintiff, DA'SHAWN COATS, a person of the full age and majority domiciled and residing in St. Louis, Missouri, who respectfully avers as follows:

1. This lawsuit arises out of the negligence of ST. TAMMANY PARISH FIRE PROTECTION DISTRICT # 4 as to the emergency services provided to MR. COATS on April 29, 2021. Specifically, the paramedics who transported MR. COATS to Slidell Memorial Hospital did not inform hospital staff in a timely manner of information relevant to MR. COATS' mental health status and need for continued monitoring. Consequently, the Slidell Memorial Hospital staff were lacking critical information as to the status and history of MR. COATS. As a result, MR. COATS was permitted to leave Slidell Memorial Hospital against medical advice, began walking in a vehicular travel lane on Interstate 10 in Slidell, and was struck by a truck, resulting in severe personal injury to MR. COATS. As is set forth below, and as will be shown at trial, MR. COATS' personal injuries were a direct and foreseeable consequence of the negligence of ST. TAMMANY PARISH FIRE PROTECTION DISTRICT # 4, both through vicarious liability and because of its own negligence as to the hiring, training, and supervision of its paramedics.

1

## JURISDICTION AND PARTIES

2. DA'SHAWN COATS, Plaintiff, is domiciled in St. Louis, Missouri.

3. Defendant ST. TAMMANY PARISH FIRE PROTECTION DISTRICT # 4 (hereinafter "ST. TAMMANY") is a municipal entity domiciled in St. Tammany Parish, Louisiana. ST TAMMANY at all times had a duty, responsibility, and obligation to ensure that its paramedics communicated information about MR. COATS to Slidell Memorial Hospital Staff in a timely manner.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. MR. COATS is domiciled in St. Louis, Missouri and ST. TAMMANY is domiciled in St. Tammany Parish, Louisiana. The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because ST. TAMMANY resides within the jurisdiction of this District and a substantial part of the events that give rise to the claims occurred in this District.

## COUNT I: NEGLIGENCE

6. In April 2021, MR. COATS was a resident of St. Bernard Parish, Louisiana.

7. On or around April 28, 2021, MR. COATS learned that his girlfriend's father had passed away. MR. COATS was very upsent and began driving to Mandeville to be with his girlfriend and her family.

8. In the evening of April 28, 2021, MR. COATS was arrested by the Causeway Police Department under suspicion of driving under the influence.

9. MR. COATS was released from St. Tammany Parish Jail on the afternoon of April 29, 2021. MR. COATS' girlfriend picked him up after his release and attempted to drive him to her family's home in Mandeville. MR. COATS became agitated, expressed suicidal thoughts, left the vehicle, and started walking away.

10. On or around 7:00 p.m. on April 29, 2021, MR. COATS was found passed out on the side of Highway 1089 in Fontainebleau State Park. An ambulance operated by ST. TAMMANY was called to render medical care to MR. COATS. Paramedics Patrick Dronet, Elliot Ozy, and Willie Wilson (hereinafter the "Paramedics") were on the crew that responded to the call for MR. COATS.

11. When ST. TAMMANY arrived to assist MR. COATS, the Paramedics learned that MR. COATS had been walking on the side of the road for four hours after being released from St. Tammany Parish Jail. MR. COATS told the Paramedics that he had consumed one beer and 2mg of alprazolam, a sedative, while he was walking. The Paramedics loaded MR. COATS into the ambulance to get him out of the roadway and because MR. COATS told the Paramedics that he had nowhere to go and no one who would pick him up. The Paramedics also noted that MR. COATS needed continuous supervision.

12. MR. COATS was transported to Slidell Memorial Hospital by ST. TAMMANY.

13. Upon information and belief, when MR. COATS arrived at Slidell Memorial Hospital, the Paramedics did not tell hospital staff that MR. COATS had been released from jail a few hours earlier, had been found in the roadway, and had consumed alcohol and a sedative while walking down the highway for four hours.

14. Upon information and belief, when MR. COATS was transferred into the care of Slidell Memorial Hospital, the ST. TAMMANY Paramedics did not provide hospital staff with a "run report" detailing MR. COATS' medical history, which included evidence that MR. COATS was having a mental health crisis.

15. Without this important information about MR. COATS' mental state, hospital staff at Slidell Memorial Hospital allowed MR. COATS to sign out against medical advice twenty-one (21) minutes after his arrival.

16. Around 9:22 p.m., <u>almost an hour after MR. COATS was permitted to leave Slidell Memorial Hospital</u>, ST. TAMMANY finally sent a report to Slidell Memorial Hospital that

contained vital details about MR. COATS and the circumstances surrounding his need for an ambulance to the hospital.

17. This report was sent by the ST. TAMMANY via fax. Fax is an outdated technology that, unlike email or electronic software, requires physical acts that slow down transmission time.

18. Without this important information about MR. COATS' mental state, hospital staff at Slidell Memorial Hospital did not know the seriousness of MR. COATS' situation and the hospital staff did not seek to obtain a Coroner's Certificate to keep MR. COATS confined to the hospital.

19. MR. COATS left Slidell Memorial Hospital on foot at 8:26 p.m. MR. COATS proceeded to walk to Interstate 10, where he entered the travel lanes.

20. Around 10:09 p.m., MR. COATS was struck by a vehicle going approximately seventy-five (75) miles per hour (hereinafter referred to as the "Pedestrian Crash").

21. According to the accident report, MR. COATS was thrown approximately 175 feet.

22. MR. COATS sustained life-threatening injuries.

23. MR. COATS was transported to University Medical Center in New Orleans via helicopter, where he was admitted for over a month and underwent more than a dozen surgeries. MR. COATS is still undergoing medical treatment for his injuries.

24. Instead of using modern technology to instantaneously transmit import and critical medical information—email, collaborative software, etc.—ST. TAMMANY used an outdated technology that requires time to physically process and is prone to human error.

25. Upon information and belief, staff at Slidell Memorial Hospital would not have permitted MR. COATS to sign out against medical advice if they knew he had recently been released from jail, had consumed alcohol and a sedative, was suffering a mental health crisis, and had been taken to the hospital to prevent him from walking on a highway.

26. Upon information and belief, if the staff at Slidell Memorial Hospital knew that MR. COATS had recently been released from jail, had consumed alcohol and a sedative, and had

been taken to the hospital to prevent him from walking on a highway, they would likely have sought to obtain a Coroner's Certificate to keep him confined to the hospital.

27. Upon information and belief, MR. COATS' personal injuries following his release from Slidell Memorial Hospital were caused by the following neglect and/or negligence by ST. TAMMANY.

    a. Failing to perform a thorough assessment of MR. COATS to ascertain his mental state.

    b. Failing to inform Slidell Memorial Hospital medical staff of facts pertinent to MR. COATS' mental health status.

    c. Failing to provide staff at Slidell Memorial Hospital with a "run report" at the time MR. COATS was transferred to hospital care.

    d. Reliance on outdated technology, namely faxing, to transmit critical medical information.

    e. Failure to provide staff at Slidell Memorial Hospital with a report detailing the circumstances of their encounter with MR. COATS in a timely manner.

    f. Other improprieties and negligent acts, to be determined during discovery.

28. At the time of the encounter with MR. COATS, Paramedics Patrick Dronet, Elliot Ozy, and Willie Wilson were employees of ST. TAMMANY and were acting within the course and scope of their employment. As such, the ST. TAMMANY is vicariously liable for the negligence of the Paramedics.

29. As a result of the Pedestrian Crash, MR. COATS sustained a broken right wrist, puncture wound to his left hip, bilateral tibia/fibula fractures, a broken jaw, lacerations to his face, scattered road rash, scattered lacerations to all his extremities, and other serious injuries.

30. MR. COATS remained hospitalized for more than a month after the Pedestrian Crash and is still undergoing surgeries to address his injuries.

31. As a result of the collision, MR. COATS has and continues to suffer from pain and suffering and inability to perform activities to the degree he did prior to the Pedestrian Crash.

32. ST. TAMMANY had a duty to ensure that they communicated information about MR. COATS' mental state, the medications he had taken, and a full history to staff at Slidell Memorial Hospital. Further, ST. TAMMANY had a duty to transmit this information in a timely manner.

33. For the reasons set forth above, and as will be shown at trial, ST. TAMMANY breached its legal duties.

34. This breach caused the injuries that are at issue in this case.

35. The injuries at issue in this case were proximately and legally caused by ST. TAMMANY and were a foreseeable result of the failure to communicate relevant information about MR. COATS to staff at Slidell Memorial Hospital in a timely manner.

36. As a result of the negligence of ST. TAMMANY, MR. COATS suffered, and hereby claims damages for, personal injury, pain and suffering, anxiety, past medical bills, future medical care, future pain and suffer, emotional distress and anxiety, loss of consortium, and limitations of activities.

## DAMAGES SOUGHT

37. By and through its conduct, ST. TAMMANY cause significant damages and injuries to MR. COATS. Plaintiff seeks to recover the following damages:

   a. Physical bodily injury suffered by MR. COATS;

   b. Pain and suffering attendant to the physical bodily injuries suffered by MR. COATS;

   c. Emotional distress, anxiety, and distress;

   d. Damages for MR. COATS' incurred medical care;

   e. Damages for MR. COATS' future medical care;

   f. Damages for MR. COATS' past and future rehabilitation services;

   g. Damages for MR. COATS' past and future pharmacy costs;

    h.  Damages for MR. COATS' past and future lost earnings and/or earning capacity;

    i.  Legal interest on all of the above; and

    j.  All other damages that are available at law.

## REQUEST FOR JURY TRIAL

38. Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, DA'SHAWN COATS prays that:

    A.  This Court award compensatory damages, legal interest, and costs against ST. TAMMANY PARISH FIRE PROTECTION DISTRICT # 4 for negligence; and

    B.  Such other relief as the Court deems just and proper, and/or is allowable under state law.

Respectfully Submitted,

**BIZER & DEREUS, LLC**
*Attorneys for Plaintiff*

/s/Andrew D. Bizer
ANDREW D. BIZER (LA # 30396)
GARRET S. DEREUS (LA # 35105)
EMILY A. WESTERMEIER (LA # 36294)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email:  ewest@bizerlaw.com
         andrew@bizerlaw.com
         gdereus@bizerlaw.com
         *Attorneys for Plaintiff*